UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OHIO SECURITY INSURANCE COMPANY,<br><br>                         Plaintiff,<br><br>-against-<br><br>UTICA FIRST INSURANCE COMPANY and TRAVELERS INDEMNITY COMPANY,<br><br>                         Defendants. | 24-CV-3971 (AS)<br><br>OPINION AND ORDER |

ARUN SUBRAMANIAN, United States District Judge:

    Ohio Security Insurance Company brought this insurance-coverage case against Utica First Insurance Company and Travelers Indemnity Company, arguing that Utica and Travelers have a duty to defend and indemnify Ohio's insured, James Hunt Construction Co., Inc., in an ongoing state-court case. All parties have moved for summary judgment. For the following reasons, Ohio's motion for summary judgment is GRANTED IN PART and DENIED IN PART, Utica's motion for summary judgment is GRANTED, and Travelers' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

    This case arises out of a lawsuit pending in New York state court: *The Gap, Inc. v. James Hunt Construction Co., Inc.*, No. 152410/2022. In that case, Gap alleged that on July 4, 2020, one of its Old Navy stores sustained damage from water that leaked out of brass valves installed as part of work done on the HVAC system. Gap alleged also that further damage occurred on November 7, 2020, when water leaked again from the brass valves. Gap sued James Hunt Construction Co., Inc., the general contractor handling (among other projects) the HVAC work that included the installation of the brass valves, for $549,867.27 in damages, alleging that Hunt was negligent.

    Hunt then sued two of its subcontractors, D.M.V. Mechanical Inc. and D.D.S. Mechanical Plumbing & Heating Corp., in the state-court action, alleging that it contracted with DMV and DDS to do the HVAC work, including installing the allegedly leaky valves. Hunt's third-party complaint alleges that DMV and DDS are contractually required to indemnify Hunt because they did the work.

    When Gap sued Hunt, Ohio (as Hunt's insurer) tendered the defense and indemnity to DMV and its insurer, Utica, which disclaimed coverage. Dkt. 1 ¶ 44. Ohio then tendered the defense and indemnity to DDS and its insurer, Travelers. Travelers also disclaimed coverage. *Id.* ¶ 47.

    Ohio now sues Utica and Travelers, alleging that both owe Hunt a duty to defend and indemnify it for the claims brought by Gap. Ohio seeks (as to both Utica and Travelers) a

declaratory judgment as to the duties of the other insurance companies and a money judgment for defense costs already incurred in the New York case. In its answer, Utica cross-claimed against Travelers, alleging that Travelers has a duty to defend and indemnify DMV in the underlying action. Before the Court now are cross-motions for summary judgment between Ohio and Utica, Ohio and Travelers, and Utica and Travelers. Both Utica and Travelers dispute that they have any duties to Hunt on the ground that Hunt does not qualify as an "additional insured" under either of their policies.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 56(a) directs courts to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A genuine issue of material fact exists if 'he evidence is such that a reasonable jury could return a verdict for the nonmoving party,'" and "all ambiguities and . . . all reasonable factual inferences" are to be resolved in favor of the nonmoving party. *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (cleaned up).

## DISCUSSION

### I. Utica has no duty to defend Hunt.

Both Ohio and Utica agree that whether Utica has a duty to defend Hunt turns on interpreting the Owner, Lessees, or Contractors endorsement in the Utica Policy. This endorsement states:

> Under Definitions, the definition of "insured" is amended to include each person or organization whom "you" are required to name as an additional insured on this policy by written contract or written agreement.
>
> The written contract or written agreement must:
>
> 1. Become effective during the policy period; and
>
> 2. Be executed prior to the "bodily injury", "property damage", "personal injury", or "advertising injury"

Dkt. 26-4 at 13. Utica says that the endorsement's requirement that "[t]he written contract or written agreement [requiring the addition of insureds] must . . . [b]ecome effective during the policy period" is "clear and unambiguous" in "preclud[ing] coverage for an additional insured if the written contract or written agreement became effective at any time other than during the policy period, including before the policy period." Dkt. 37 at 9, 11. Ohio disagrees, saying that "[t]his phrase does not say 'first become effective' or something like 'executed' or 'signed,'" and must be "construed within its context." Dkt. 48 at 1. It argues that "DMV's agreement to provide completed operations coverage to Hunt [as an additional insured] did not become effective until there was property damage" that triggered the coverage, which happened during the policy period. *Id.* at 8.

All parties agree that New York law applies to this dispute. "In New York, the ordinary rules of contract interpretation apply to insurance policies." *Two Farms Inc. v. Greenwich Ins. Co.*, 628 F. App'x 802, 804 (2d Cir. 2015) (citation omitted). "Thus, 'an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract.'" *Id.* (citation omitted). First, "the court must determine as 'a threshold question of law' whether the contract is ambiguous." *Id.* (citation omitted). "Contract terms are ambiguous if they are capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages, and terminology as generally understood in the particular trade or business." *Lepore v. Hartford Fire Ins. Co.*, 800 F. App'x 29, 31 (2d Cir. 2020) (cleaned up). "Summary judgment is appropriate when the terms of a policy are unambiguous." *Two Farms*, 628 F. App'x at 804 (citation omitted).

The Owner, Lessees, or Contractors endorsement in the Utica Policy is not ambiguous. The plain and ordinary meaning of the sentence "[t]he written contract or written agreement must . . . [b]ecome effective during the policy period" is that the written contract or agreement between Hunt and DMV, in which DMV agreed to procure insurance naming Hunt as an additional insured, must have come into effect while the Utica Policy was active. There is no dispute that the Utica policy period was June 11, 2020, to June 11, 2021. Dkt. 27 at 9; Dkt. 37 at 3. Nor is there any dispute that the Hunt-DMV contract was made on June 3, 2019, and the "date of commencement" of work was also June 3, 2019. Dkt. 42 at 5; *see also* Dkt. 26-7 at 1. In addition, DMV's subcontracting work was completed before June 11, 2020. Dkt. 42 at 5. So clearly the Hunt-DMV contract, which defined DMV's subcontracting relationship with Hunt and the scope of its work for Hunt, "[b]ec[a]me effective" prior to June 11, 2020, and thus the "written contract" that could have made Hunt an additional insured covered by DMV's insurance with Utica did not meet the requirements set forth in the Utica Policy. So Hunt is not an additional insured on the Utica Policy, and Utica has no duty to defend Hunt.

Ohio's argument that the Court should construe "becomes effective" to refer to the date when a coverage obligation arises, Dkt. 48 at 9, and not to the date when the agreement was made or work began, cannot be reconciled with the text of the Utica policy endorsement. That endorsement has two conditions: (1) that the written agreement adding another entity as an insured "become effective" during the policy period—which speaks to the agreement's effective date, not to when any occurrence or coverage obligation arises—and (2) that the agreement be executed prior to the occurrence for which coverage is sought—which refers to the coverage obligation. Ohio's argument eliminates the first condition and construes the endorsement as honoring any agreement executed prior to a coverage obligation arising. None of the canons of interpretation Ohio refers to justifies rewriting the contract in this way. To the extent that DMV should have procured broader coverage, and in failing to do so breached its obligation to Hunt to obtain insurance that would have covered this incident, that's a matter for Hunt's case against DMV in state court, not this insurance-coverage action.

### II. Travelers has a duty to defend Hunt.

The dispute between Ohio and Travelers similarly turns on interpreting a single contract provision to determine if Hunt is an additional insured under the Travelers Policy. The Blanket Additional Insured Endorsement in the Travelers Policy states:

> Any person or organization that [DDS] agree[d] in a written contract or agreement to include as an additional insured on this Coverage Part is an insured.

Dkt. 27 at 14. The relevant "written contract or agreement" is the DDS-DMV Contract, in which DDS agreed:

> [DDS] shall procure and shall maintain . . . such insurance as will protect [DMV], all entities [DMV] is required to indemnify and hold harmless, [and] the Owner . . . for claims arising out of or resulting from [DDS's] Work under this Contract Agreement . . . . [DDS's] insurance shall include . . . additional insured coverage for the benefit of [DMV], Owner[,] or anyone else [DMV] is required to name (as set forth in the schedule below).

*Id.* at 8.

Ohio and Travelers focus their dispute on whether the language in the DDS-DMV Contract in which DDS committed to getting insurance "as will protect . . . all entities [DMV] is required to indemnify and hold harmless" is enough to make Hunt a "person or organization that [DDS] agree[d] in a written contract or agreement to include as an additional insured." Travelers argues that the DDS-DMV Contract language "does not contain the type of explicit requirement to name Hunt as an additional insured needed to create additional insured coverage under the Travelers policy." Dkt. 50 at 1. It cites New York cases for the proposition that "where an insurance policy requires an underlying agreement to trigger additional insured coverage, the plain language of that written contract must explicitly require coverage of the prospective additional insured to satisfy the endorsement." *Id.* at 12. So the conflict between Ohio and Travelers boils down to whether contractual language to obtain insurance "as will protect" other entities is an agreement to make those other entities "additional insureds."

Ohio argues that "an agreement to obtain liability insurance that will 'protect' a person or entity is construed as an agreement to include that person or entity as an additional insured on such liability policy." Dkt. 49 at 11. It leans on *Kinney v. G.W. Lisk Co.*, 556 N.E.2d 1090 (N.Y. 1990), *Northside Tower Realty, LLC v. Admiral Insurance Co.*, 118 N.Y.S.3d 181 (2d Dep't 2020), and *McEllistrem v. CAB Associates*, 1996 WL 524392 (E.D.N.Y. Sept. 3, 1996). By contrast, Travelers argues that "as will protect" is insufficient because in New York, "where an insurance policy requires an underlying agreement to trigger additional insured coverage, the plain language of that written contract must explicitly require coverage of the prospective additional insured." Dkt. 33 at 6. It relies on *140 Broadway Property v. Schindler Elevator Co.*, 901 N.Y.S.2d 292 (2d Dep't 2010), *Clavin v. CAP Equipment Leasing Corp.*, 66 N.Y.S. 3d 470 (1st Dep't 2017), and *Bishop v. Port Authority of New York & New Jersey*, 566 N.Y.S. 2d 341 (2d Dep't 1991).

4

Ohio has the better of the argument. First, putting the cases to the side, Travelers offers no explanation as to what DDS's obligation to procure and maintain insurance "as will protect" entities like Hunt could mean other than that DDS was required to obtain coverage for them by adding them as an insured. But even if there were any doubt, the cases confirm Ohio's interpretation. In *Kinney*, the New York Court of Appeals interpreted a contractual requirement to "*maintain such insurance* policies . . . *as will protect* both *the Contractor* . . . and the Subcontractor" as an "agreement to procure liability insurance covering [the Contractor]." 556 N.E.2d at 1091–92. This is nearly identical to the language in the DDS-DMV Contract. Travelers' response is that in *Kinney*, the meaning of "as will protect" "d[id] not appear to have been litigated, and [it was] unclear if all provisions relevant to coverage were quoted in [the] opinion." Dkt. 57 at 6 n.6. But the Court of Appeals relied on the "as will protect" language to conclude that the subcontractor "breached its agreement to procure liability insurance covering" the contractor. *Kinney*, 556 N.E.2d at 1092.

In *Northside*, another of Ohio's cases, the relevant contractual provisions were again almost identical. "[T]he additional insured endorsement . . . extended coverage to any person or organization Scorcia had agreed by written contract to name as an additional insured on the subject policy." 118 N.Y.S.3d at 183. The contract between Scorcia and Northside "provided that . . . '[Scorcia] shall purchase and maintain . . . the following insurances *as will protect* it and [Northside].'" *Id.* (alterations in original) (emphasis modified). "The natural and intended meaning of the phrase 'as will protect,'" the Second Department concluded, was that both Scorcia and Northside were "intended to enjoy the coverage specified in the contract." *Id.* In response, Travelers says that *Northside*'s holding depends on other provisions in the contract that referenced "Additional Insureds," which the Second Department noted would be superfluous if "as will protect" didn't confer additional insured coverage to Northside. Dkt. 57 at 5. Because DMV and the property owner "could be additional insureds," Travelers says, mentions of "Additional Insureds" in the contracts here are not superfluous even if Hunt isn't an additional insured. *Id.* at 5 n.5. However, the Second Department made clear that the "natural and intended meaning of the phrase 'as will protect'" is to confer additional insured coverage. Its discussion of the use of the phrase "Additional Insureds" elsewhere in the contract at issue in *Northside* was simply additional support for its interpretation of the plain meaning of "as will protect."

Finally, the Eastern District of New York's decision in *McEllistrem* confirms the Court's reading of *Kinney* and the "protect" language. In *McEllistrem*, the court observed that the relevant language was "virtually identical to . . . such language [that] obligated the subcontractor to maintain insurance for the contractor" in *Kinney*. 1996 WL 524392, at *10. "Like the contract in *Kinney*, the agreement [in *McEllistrem*] contain[ed] no express language requiring the owner or general contractor to be named as an 'additional insured.'" *Id.* But, the court concluded, "[s]uch an omission . . . does not create a material fact sufficient to preclude summary judgment" in favor of the party claiming to be an additional insured. *Id.* In response to *McEllistrem*, Travelers says only that there was "no indication of potential language . . . that might indicate an intent not to

5

provide additional insured coverage." Dkt. 57 at 6. But Travelers doesn't point to any such language in the contracts here either.

Travelers' cited cases are inapplicable here. There was no similar "as will protect" language in *140 Broadway Property*, only a provision that required the purchase of certain forms of insurance. *See* 901 N.Y.S.2d at 293. In *Clavin*, a construction leasing company (CAP Rents) brought a failure to procure insurance claim against an injured worker's employer (Schiavone). *See* 66 N.Y.S.3d at 471. The First Department held that language in the leasing contract requiring Schiavone to procure insurance "for the benefit of" CAP Rents was not "express and specific language requiring that CAP Rents be named as an additional insured." *Id.* "For the benefit of" is not as definitive as the language at issue here, and nothing else in *Clavin* undermines the Court of Appeals' interpretation of "as will protect" to require insurance coverage in *Kinney*. And in *Bishop*, TWA hired Seelye to perform engineering services, and Seelye then hired subcontractor Dayton Brown. *See* 566 N.Y.S.2d at 341–42. A Dayton Brown employee was injured while doing the subcontracted work, and after he sued TWA, TWA sought indemnification from Seelye. *Id.* at 342. Paragraph 6 of Seelye's contract with TWA required Seelye to "hold [TWA] free and harmless [from liability] . . . [and] maintain such insurances . . . as may be necessary to protect" itself and TWA. *Id.* The Second Department interpreted Paragraph 6 in its entirety, which contained "hold . . . harmless" language, to mean that Seelye was required to "obtain 'hold-harmless' insurance coverage in favor of TWA" but "did not require Seelye to 'obtain a liability policy insuring [TWA].'" *Id.* (alteration in original) (citation omitted). Ohio concedes that *Bishop* "appears at first blush to support Travelers' argument." Dkt. 56 at 5. However, Ohio also correctly identifies that *Bishop* conflicts with the Court of Appeals' holding in *Kinney* and was superseded by the Second Department's decision three decades later in *Northside*, in which it directly interpreted the "as will protect" language to support Ohio's interpretation.

The Court's interpretation of "as will protect" appears to have been shared by Travelers as late as September 2024, when Travelers acknowledged that it had a duty to defend DMV as an additional insured based on the same contractual provisions in the DDS-DMV Contract and the Travelers Policy. *See* Dkt. 25-12. The difference between DMV and Hunt with respect to these provisions is that DMV is the first in a series of listed entities subject to additional insured coverage, while Hunt, as an "entit[y] [DMV] is required to indemnify and hold harmless," is the second. That placement makes no difference to interpretation of the phrase "as will protect."

Travelers also points to the fact that the DDS-DMV Contract has a heading for "List of Indemnified Parties and Additional Insureds" with no entities listed. Dkt. 36-3 at 17. The fact that no entities are listed doesn't mean that DDS didn't agree to provide coverage for Hunt as an additional insured. When DDS's coverage obligation is first explained, there is no reference to any listing of covered entities as a requirement. Rather, DDS was required to obtain insurance to protect anyone DMV "is required to indemnify and hold harmless," which includes Hunt. Dkt. 36-3, ¶ 2. While there are subsequent references to parties "as set forth in the schedule below," or "as listed below," construing these phrases to require listing or otherwise to forsake coverage is inconsistent with the parties' agreement. First, nothing in the Contract says that omission from the

list is fatal. Instead, the list is just a mechanism to keep track of the entities that the parties otherwise agreed would be covered. That's why every mention of the list also refers to the entities that are—separate and apart from the list—"required" to be named. *Id.* ¶ 2(a), (g). Second, construing the list to override the Contract's general language—which as the Court noted above, can only be read to require coverage for Hunt—would negate that language in lieu of a listing requirement. But if that was the parties' intent, as Travelers now argues, the parties would have simply said that, without the other language that the parties spend dozens of pages fighting about. For these reasons, any oversight regarding the list doesn't negate Travelers' coverage obligation. *See, e.g.*, *Houston Cas. Co. v. Hudson Excess Ins. Co.*, 2021 WL 4555526, at *3 (S.D.N.Y. Oct. 4, 2021) (holding that a party qualified as an additional insured "[a]lthough a box for 'additional insured' is not checked on the subcontract, and although the certificate of insurance . . . returned with the subcontract does not list [that party]").

Hunt qualifies as an additional insured covered by the Travelers Policy. Because Travelers' only argument for having no duty to defend was that Hunt didn't qualify as an additional insured, Ohio's and Utica's motions on this score are granted, and Travelers' motion is denied. Ohio further argues that the Travelers Policy applies as primary insurance as compared to the Ohio Policy, which Travelers doesn't dispute. So the Ohio Policy applies in excess of the Travelers Policy.

### III.   It is premature to adjudicate Travelers' duty to indemnify.

Because Hunt is an additional insured covered by the Travelers Policy, the Court turns to the question of indemnity.

"[T]he duty to indemnify is narrower than the duty to defend." *MIC Gen. Ins. Co. v. Allen*, 697 F. App'x 717, 720 (2d Cir. 2017). It "arises only if the claim for which the insured has been judged liable lies within the policy's coverage." *Cincinnati Ins. Co. v. Roy's Plumbing, Inc.*, 692 F. App'x 37, 38 (2d Cir. 2017) (citation omitted). "Generally, because a duty to indemnify is based on the 'facts established at trial and the theory under which judgment is actually entered in a case,' it is often premature to issue a declaratory judgment as to the duty to indemnify before the basis for liability is established." *Pac. Emps. Ins. Co. v. St. Francis Care, Inc.*, 729 F. App'x 129, 130 (2d Cir. 2018) (citation omitted).

Here, there has been no finding of liability in the state-court case, and under the circumstances, the Court declines to issue a declaration concerning the scope of Travelers' indemnity obligation at this juncture. If further proceedings in that case—for instance, a finding or judgment as to liability—changes the landscape and renders the issue of indemnity ripe for decision (and the parties are unable to settle things among themselves), the parties can return to this Court for resolution of the issue.

### IV.   Travelers has a duty to defend DMV and must reimburse Utica for DMV's defense.

Utica does not have a duty to defend or indemnify Hunt, but it also moved for summary judgment against Travelers as to Travelers' primary duty to defend DMV. Travelers responds that it has "conceded a duty to defend DMV." Dkt. 50 at 22. Given that Travelers has waived any

7

argument challenging its primary duty to defend DMV, Utica is entitled to a declaration of that duty to defend.

Utica also seeks reimbursement for fees and expenses already incurred in defending DMV in the New York action. Travelers "concedes that it may have some obligation to reimburse DMV for past defense costs" but argues that "it has not received any sort of demand or billing support from DMV or Utica to support such an obligation." *Id.* It asks for an "inquest, to the extent [the parties] cannot resolve those issues among themselves." *Id.* Utica responds that it will "provide billing support upon entry of judgment that Travelers owes a primary and non-contributory duty to defend DMV." Dkt. 59 at 5. Travelers does not appear to contest that it must reimburse DMV for past costs, and the only issue in dispute is the amount. The parties should make every effort to resolve that dispute, and the Court will order an inquest if one becomes necessary.

8

## CONCLUSION

Ohio's motion for summary judgment is GRANTED IN PART and DENIED IN PART, Utica's motion for summary judgment is GRANTED, and Travelers' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

This case is STAYED pending further order of the Court. The parties should submit a joint update concerning the status of the state-court action every 120 days, or earlier if there are any relevant developments that may justify a lifting of the stay.

The Clerk of Court is respectfully directed to terminate Dkts. 24, 29, and 34.

SO ORDERED.

Dated: August 12, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge